## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROBERT E. M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-CV-2-CVE-JFJ** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Robert E. M. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

### I.      General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to

establish the existence of an impairment(s)."  20 C.F.R. §§ 404.1521, 416.921.  *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a).  A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*

A court's review is based on the administrative record, and a court must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's findings in

order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395

F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the

Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*,

287 F.3d 903, 908 (10th Cir. 2002).

## II.      Procedural History and the ALJ's Decision

Plaintiff, a male army veteran who was then 48-years-old, applied for Title II disability

insurance benefits on August 12, 2015, alleging a disability onset date of December 30, 2014.

Plaintiff claimed that he quit his job and became unable to work in December 2014, due to stress

and because he feared losing control of his emotions and hurting someone.  Plaintiff sought

disability benefits based on mental and physical impairments.  Plaintiff's claim for benefits was

denied initially on September 16, 2015, and on reconsideration on February 25, 2016.  Plaintiff

then requested a hearing before an ALJ, and the ALJ conducted the hearing on December 13, 2017.

The ALJ issued a decision on April 3, 2018, denying benefits and finding Plaintiff not disabled.

The Appeals Council denied review, and Plaintiff appealed.

At step one, the ALJ found that Plaintiff's date last insured was September 30, 2020 and

that Plaintiff had not engaged in substantial gainful activity since December 30, 2014.  At step

two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease

of the cervical and lumbar spine; degenerative joint disease of the left shoulder and right knee;

diabetes; hypertension; depression; and post-traumatic stress disorder ("PTSD").  R. 12.  At step

three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of

such severity to result in listing-level impairments.  R. 13-14.

After evaluating the objective and opinion evidence and Plaintiff's and his wife's

subjective statements, the ALJ concluded that Plaintiff had the RFC to perform a range of work as

follows:

> [T]he claimant has the residual functional capacity to perform light work, as defined
> in 20 CFR 404.1567(b) except that he can occasionally climb ramps and stairs,
> kneel, crouch, crawl, and stoop, but never climb ladders, ropes, or scaffolds.  The
> claimant can perform simple and some complex tasks with routine supervision.  He
> is able to adapt to work situations and interact appropriately with supervisors and
> co-workers on a superficial basis.  He can have no contact with the public and
> cannot perform customer service work.

R. 14.  The ALJ found that Plaintiff was unable to perform past relevant work.  R.19.  Based on

the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff

could perform the requirements of representative occupations such as Shoe Packer, Assembler,

and Cleaner and Polisher.  R. 20.  The ALJ determined the VE's testimony was consistent with the

information contained in the Dictionary of Occupational Titles ("DOT").  R. 20.  Based on the

VE's testimony, the ALJ concluded these positions existed in significant numbers in the national

economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issues**

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ

committed harmful legal error because she failed to discuss significantly probative medical

evidence supporting inclusion of a reaching/handling restriction in the RFC;[1] and (2) the ALJ's

---

[1] The regulations governing non-exertional limitations explain that "[r]eaching, handling,
fingering, and feeling require progressively finger usage of the upper extremities to perform work-
related activities."  Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *7.  They further
explain that "[r]eaching (extending the hands and arms in any direction) and handling (seizing,
holding, grasping, turning or otherwise working primarily with the whole hand or hands) are
activities required in almost all jobs."  *Id.*

omission of a reaching/handling restriction from the RFC was not supported by substantial evidence.  Although the ALJ's decision omits discussion of certain examination records, the undersigned finds no legal error in the ALJ's narrative discussion and finds the RFC supported by substantial evidence.

## IV.    Analysis

### A.    Narrative RFC Discussion Is Adequate

Plaintiff contends the ALJ failed to discuss medical records regarding Plaintiff's right shoulder impairments, bilateral elbow impairments, and bilateral hand impairments, rendering the ALJ's decision "inadequate for a proper judicial review."  ECF No. 12 at 8.  The Commissioner contends "the ALJ cited enough of the evidence to demonstrate to Plaintiff and the Court that she considered the evidence related to Plaintiff's neck and upper extremity impairments."  ECF No. 14 at 8.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96–8p, 1996 WL 374184, at *7.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  In explaining *Clifton*, the Tenth Circuit clarified that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."  *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).  The Tenth Circuit has also held that an ALJ need not make explicit findings regarding each function in the "function-by-function" analysis required by SSR-96-8P.  *See Hendron v. Colvin*, 767 F.3d 951,

956 (10th Cir. 2014) (finding no error where ALJ failed to explicitly discuss "sitting" ability in assessing the claimant's RFC).

In her decision, the ALJ concluded that, "[t]o accommodate the claimant's back, knee, and shoulder pain, the undersigned limits him to work at the light exertional level with additional postural restrictions."  R. 19.  Those postural restrictions included never climbing ladders, ropes, or scaffolds.  R. 14.  However, the ALJ did not include any restrictions related to reaching or handling.  The omission of such a restriction is Plaintiff's chief complaint on appeal.

During the hearing before the ALJ, Plaintiff identified two medical impairments that created restrictions on his ability to reach and handle: (1) bilateral elbow neuropathy, which made it difficult to do "repeated motion" and to "pick up stuff"; and (2) a torn labrum in his left shoulder, which made it difficult to raise his hand very high or to pick up much weight.  R. 52.  The ALJ acknowledged both subjective complaints in her narrative discussion and addressed medical records related to each.   With respect to Plaintiff's bilateral elbow neuropathy, the ALJ acknowledged Plaintiff's "continued complaints of peripheral neuropathy" and then discussed a motor nerve conduction study showing only "mild demyelinating right ulnar neuropathy at the elbow but no carpal tunnel syndrome or large-fiber polyneuropathy."  R. 17 (citing R. 1521).  With respect to the torn labrum in the left shoulder, the ALJ discussed examination findings of decreased range of motion in his left shoulder with pain, R. 16 (citing R. 1506); MRI results for the left shoulder from December 2016 showing a "superior labral tear," R. 17 (citing R. 1377); and treatment of the left shoulder impairment in the form of steroid injections in February 2017 and physical therapy commencing in April of 2017, *see* R. 16-17 (citing R. 1460, 10F p. 87, R. 1679, 12F p. 43).  The ALJ stated that Plaintiff "continued with physical therapy through June 2017 and showed improvement."  R. 17 (citing R. 1679).

Citation to these records and the ALJ's discussion indicates the ALJ considered the elbow neuropathy (and corresponding bilateral handling limitations) and the left shoulder impairment (and corresponding reaching and handling limitations) but did not impose any further restrictions. The undersigned can follow the ALJ's reasoning that: (1) the elbow neuropathy was mild, did not amount to carpal tunnel syndrome, and was effectively treated with medications, such that it did not warrant further restrictions; and (2) the left shoulder tear was significantly improved through steroid injections and physical therapy, such that it did not warrant further restrictions. Although the ALJ could have written a more thorough decision and offered further explanation of certain records, the undersigned finds the discussion adequate to demonstrate that the ALJ followed correct legal standards. *See Coltharp v. Colvin*, No. 15-CV-0110-CVE-FHM, 2016 WL 3166559, at *3 (N.D. Okla. June 6, 2016) ("As the Tenth Circuit has explained, technical perfection is not required in an ALJ's decision.") (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012)).

In her narrative discussion, the ALJ failed to discuss certain medical examination records showing a right shoulder impairment and bilateral hand tingling and numbness.[2] However, the record indicates the ALJ adequately considered these records and impairments. As argued by the Commissioner, the ALJ cited to records noting right shoulder impairments and hand numbness. *See, e.g.*, R. 1415 (discussing right shoulder impairment and noting that "left much worse than right"); R. 294 (discussing arm and hand tingling and numbness); R. 1634 (noting Plaintiff complained that left fingers were numb and tingling and noting decreased bilateral grip strength). The ALJ also stated that she considered the entire record in determining the RFC. R. 14. The undersigned therefore concludes these impairments and records were considered by the ALJ. *See*

---

[2] During the hearing, Plaintiff did not discuss any right shoulder impairment or work-related limitations from a right shoulder impairment. Plaintiff limited his discussion of neuropathy to both elbows and did not discuss numbness or tingling in his hands. R. 52.

*Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (explaining that, where ALJ indicates he has considered all the evidence, court's practice is to take ALJ at his word).

Further, the ALJ did not commit legal error by failing to discuss certain examination findings, because they are not significantly probative and do not require specific weighing or rejection by the ALJ. As to hand numbness and grip strength, Plaintiff contends the following records required discussion: (1) January 2015 – report of left shoulder pain and "left ring and little finger on and off tingling sensation and nocturnal numbness," with physician assessment of "shoulder pain most likely OA" and "cubital tunnel syndrome splints, pads, activity modification," with a plan to order a left shoulder x-ray, R. 557; (2) March 2015 – exam findings of "mildly diminished triceps reflex left" but "no weakness of hand," R. 425; (3) April 2015 – exam findings that Plaintiff had 4-/5 hand strength, R. 344; (4) September 2015 – report of weakness in triceps and left fingers being numb and tingling, with referral for cervical epidural steroid injection, R. 1632-34; (5) January 2016 – exam findings of some difficulty holding things with left hand but a 4+/5 grip strength, R. 1296-97. Upon close review of these records, they do not contradict the RFC, require weighing or rejection, or otherwise require remand for further discussion by the ALJ. These records reflect only minor decreases in bilateral grip strength and sporadic findings of numbness, which predate the motor nerve conduction study conducted in October 2016 after these examinations.

As to the right shoulder, Plaintiff contends the following records required discussion by the ALJ: (1) December 2015 – results of right shoulder X-ray showing minor degenerative changes in AC joint of right shoulder, R. 1289; (2) April 2016 – physician's impression of "right lateral epicondylitis – exercises and avoidance of activities that trigger pain, elbow brace ordered" and "bilateral shoulder pain sec to impingement – will refer to PT for additional sessions," R. 1606; (3) August 2016 – examination finding "restriction of bilateral shoulder elevation post 90 and also

has impingement sign"; (4) April 2017 – report of "bilateral shoulder pain, elbow pain and diffuse joint pains," with a plan to reorder physical therapy for left shoulder labral tear and increase dose of Gabapentin for neuropathy, R. 1647-48.  Upon close review of these records, they do not require remand for further discussion by the ALJ.  These records reflect minor degenerative arthritis in the right shoulder in 2015, which was considered by the ALJ and agency reviewers.  They also reflect subsequent examination findings in 2017 of right tennis elbow, prescription of a right elbow brace, and "bilateral" shoulder pain and restricted range of motion.  However, the ALJ considered these later complaints and imposed certain postural limitations to account for shoulder pain, including climbing limitations.  Further, the physical therapy notes dated June 2017, which are cited by the ALJ, reflect only continued "pain in left shoulder"; reflect no testing of the right shoulder active range of motion; and reflect a nearly full range of motion on the right shoulder passive range of motion (180 degrees flexion, 180 degrees abduction, 90 degrees ER in scapular plane, and 80 degrees IR in scapular plane).  R. 1679.  The notes also reflect that Plaintiff's "chief complaint" upon starting therapy was "limited ROM of the left shoulder" and that a goal was to "exhibit ROM WFL as compared to opposite extremity."  R. 1695-96.  In addition, as explained above, the ALJ also cited only "mild" findings in relation to Plaintiff's bilateral elbow neuropathy.

Although the ALJ did not discuss every medical examination finding, the question is whether the lack of discussion of Plaintiff's non-severe bilateral upper extremity impairments resulted in legal error.  Upon review of the omitted medical observations and the whole record, the undersigned finds no need for express discussion or further analysis of such records.  *See Howard*, 379 F.3d at 947.

### B.   RFC Is Supported by Substantial Evidence

Plaintiff argues that the RFC is not supported by substantial evidence, because the ALJ found a severe cervical spine and left shoulder impairment and noted limited range of motion in

the left shoulder, but failed to impose a corresponding reaching restriction. This argument is not persuasive. The ALJ fully considered the left shoulder impairment and the November 2016 findings of limited range of motion in the left shoulder, but nonetheless imposed no reaching restrictions after Plaintiff showed improvement following physical therapy. R. 1679. The ALJ considered the most recent, relevant medical record regarding range of motion in the left shoulder, cited that record, and concluded that the RFC adequately accounted for functional limitations flowing from the impairment. The undersigned may not reweigh that evidence or substitute its judgment for the ALJ. *Hackett*, 395 F.3d at 1172.

Plaintiff's cited cases are distinguishable. This is not a case where the ALJ wholly ignored a consultative examiner's finding of a limited range of motion. *Cf. Aday v. Colvin*, No. CIV-13-431-R, 2014 WL 2766080, at *3 (W.D. Okla. June 18, 2014) (reversing where "the ALJ's RFC assessment actually ignores the findings of Dr. Le, an examining State agency medical consultant" and reasoning that "[h]ad the ALJ given any weight to Dr. Le's findings, the ALJ would have included manipulative limitations resulting from Plaintiff's poorly healed broken right humerus including, as Plaintiff contends, limitations in reaching"). Here, the ALJ discussed a finding of limited range of motion finding in the left shoulder but then discussed Plaintiff's improvement. Nor is it a case where an ALJ found a severe impairment at step two and failed to impose any corresponding work-related limitations. *Cf. Bailey v. Astrue*, no. CIV-10-227-SPS, 2011 WL 4553124, at *3 (E.D. Okla. Sept. 29, 2011) (reversing where ALJ found depression severe at step two but failed to impose any work-related limitation or analysis of depression's impact on work functions). Here, the ALJ considered Plaintiff's cervical spine and left shoulder impairment and corresponding medical records, and imposed a light work restriction with other postural limitations. Considering the entire record, the undersigned concludes this conclusion is supported by substantial evidence.

Plaintiff next argues that the RFC is not supported by substantial evidence, because the omitted records regarding bilateral upper extremities indicate that Plaintiff's "cervical spine and bilateral upper extremity impairments repeatedly caused him decreased range of motion, strength and grip deficits, and decreased or abnormal sensation and reflexes." ECF No. 12 at 13. The undersigned disagrees that this evidence overwhelms evidence supporting the ALJ's RFC. The ALJ relied on and gave great weight to the agency reviewers' opinions that a light work restriction adequately accounted for Plaintiff's medical impairments. Both reviewers failed to impose reaching, handling, or fingering restrictions. The ALJ also considered medical records post-dating the last agency review in February 2016, *see* R. 16-17, and added certain postural limitations to account for Plaintiff's "back, knee, and shoulder pain," including climbing restrictions. R. 18. As explained in detail above, the omitted records regarding bilateral upper extremities contain only mild findings of arthritis in the right shoulder, mild reduced grip strengths, and limited findings of numbness and tingling in conjunction with left arm pain or elbow neuropathy, both of which were addressed by the ALJ. Although there is evidence that could have supported greater restrictions, such evidence does not "overwhelm" other evidence supporting the ALJ's selected RFC. The RFC's omission of a reaching/handling restriction is supported by "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and the undersigned recommends affirming the decision. *See Grogan*, 399 F.3d a 1261.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written

objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by July 21, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 7th day of July, 2020.


**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**