UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT E. M., | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 19-CV-0002-CVE-JFJ |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 17) of Magistrate Judge Jodi F. Jayne recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for Title II disability and disability insurance benefits. Plaintiff timely filed an objection (Dkt. # 18) to the report and recommendation, and he seeks remand for further review. Defendant has filed a response (Dkt. # 19). The Court has reviewed the record and has conducted a de novo review of those portions of the findings or recommendations to which objection was made.

I.

On August 12, 2015, plaintiff, a male army veteran then forty-five years old, applied for Title II disability and disability insurance benefits, alleging a disability onset date of December 30, 2014. Dkt. ## 10-2, at 11, 16; 10-5, at 2. Plaintiff claimed disability due to back and knee pain, as well as depression and post-traumatic stress disorder (PTSD). Dkt. # 10-2, at 16.

Plaintiff, represented by counsel, requested a hearing before an administrative law judge (ALJ), and that hearing was held on December 13, 2017. Id. at 33. Plaintiff was forty-seven at the time of the hearing. Id. at 36. Plaintiff was a sales associate or a manager in the auto center at Sears, Roebuck and Company from 2002 to 2008 or 2009. Id. at 39-40. In 2009, plaintiff worked for Jumbo II, LLC, where he was a manager. Id. at 41. Plaintiff was the general manager for Car Mart from 2009 to 2014. Id. at 41-42. He has tried working in security with a friend in Tennessee since January 1, 2017. Id. at 43. Plaintiff testified that he did not stay at jobs for very long due to stress. Id. He testified that he had panic attacks and would "have angry blowups" with supervisors, coworkers, and customers. Id. at 44. He attributes this to his PTSD. Id. He testified that his panic attacks cause him tightness of chest and shortness of breath. Id. at 45. He would also get "tingling" in his hands. Id. He cannot go into the grocery store alone, and sometimes gets nightmares. Id. at 46. He takes anxiety medication that helps him sleep, but sometimes he gets flashbacks. Id. He is obsessive about checking the locks on his door and making sure that the stove is turned off. Id. at 47. He testified that he is suspicious of everyone. Id. at 48-49. Plaintiff testified that he has intrusive thoughts relating to suicide or homicide. Id. at 49. He testified that he had a drinking problem when he was working. Id. at 50. He has a wife and three children. Id. at 51. He gets overwhelmed with household chores. Id. For most of the day, he plays Call of Duty on his Playstation 4. Id. at 52. He testified that he has a bad back and has to get spinal injections. Id. He also had his anterior crusiate ligament (ACL) replaced two weeks prior to the hearing. Id. He has had issues with neuropathy in his elbows and feet. Id. at 53. He has a torn labrum in his left shoulder. Id. He has difficulty sitting in a chair for long periods of time. Id. at 54. He is unable to keep track of taking his medications. Id. at 56.

The ALJ called the vocational expert (VE) Elizabeth Wheeler to testify about plaintiff's ability to work. Id. at 57. Plaintiff's attorney objected to the VE testifying without hearing plaintiff's testimony. Id. at 58. The VE testified that plaintiff has been a general manager in the automotive industry (Dictionary of Occupational Titles (4th ed. Rev. 1991) [DOT] § 187.167-162), which is light work with an SVP of 8. Id. at 59. He has also been a management trainee (DOT § 189.167-018), which is light work with an SVP of 6. Id. He has also been a sales person, general merchandise, in the retail industry (DOT § 279.357-054), which is light work with an SVP of 3. Id. The grocery manager position was not included in the jobs identified. Id. The ALJ next asked the VE a hypothetical assuming a person of the same age, education, and past relevant work as plaintiff. Id. In the first hypothetical, the VE was asked to assume

> they can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. They can stand and walk for six out of eight hours. They can sit for six out of eight hours. No climbing ladders, ropes, or scaffolds. Occasional[ly] climb stairs and ramps. Occasional[ly] kneel, crouch, crawl, and stoop. Able to learn, understand, remember, and perform simple and some complex tasks with routine supervision. No public contact. No customer service work. Able to interact appropriately with supervisors and coworkers on a superficial work basis. Able to adapt to work situations.

Id. at 59-60. The VE was asked if that person could do plaintiff's past relevant work. Id. at 60. The VE answered that the person could not perform any of plaintiff's past relevant work. Id. However, the VE stated that there are other jobs in the regional and United States economies that the hypothetical person could perform. Id. The first example was a shoe packer (DOT § 920.687-166, 32,614 jobs in the United States and 3,260 jobs in the state), which is light work with an SVP of 2. Id. The next example was an assembler (DOT § 706.684-042, 224,138 jobs in the United States and 1,750 jobs in the state), which is light work with an SVP of 2. Id. The last example was a cleaner

and polisher (DOT § 709.687-010, 440,091 jobs in the United States and 5,020 jobs in the state), which is light work with an SVP of 2. Id. Plaintiff's attorney next asked the VE if the hypothetical individual were absent from work the equivalent of two days per month, being unable to report to work some days and leaving work early other days, whether that individual would be able to maintain employment in the competitive job market. Id. at 61. The VE answered that they would not. Id.

On April 3, 2018, the ALJ issued a written decision finding plaintiff not disabled. Id. at 8. The ALJ first found that plaintiff has not engaged in substantial gainful activity since December 30, 2014. Id. at 13. The ALJ also found that plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left shoulder and right knee, diabetes, hypertension, depression, and PTSD. Id. The ALJ next found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 14. The ALJ addressed plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except that he can occasionally climb ramps and stairs, kneel, crouch, crawl, and stoop, but never climb ladders, ropes, or scaffolds. The claimant can perform simple and some complex tasks with routine supervision. He is able to adapt to work situations and interact appropriately with supervisors and co-workers on a superficial basis. He can have no contact with the public and cannot perform customer service work.

Id. at 15.

In her RFC determination, the ALJ considered (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) factors that precipitate

and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that plaintiff receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that plaintiff uses or has used to relieve pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms. Id. at 16-20. After consideration of the evidence, the ALJ determined that plaintiff was unable to perform any past relevant work, but he could perform the jobs of shoe packer, assembler, and cleaner and polisher. Id. at 20-21.

On November 13, 2018, the Appeals Counsel denied plaintiff's request for review of the ALJ's decision. Id. at 2. Plaintiff thereafter sought judicial review. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the Commissioner's decision. Dkt. # 17, at 1.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id*. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

### III.

Plaintiff makes two principal objections to the decision of the Commissioner: (1) "[t]he ALJ committed legal error because [s]he ignored much of the probative medical evidence related to [plaintiff's] bilateral upper extremity impairments,"[1] and (2) "[t]he ALJ's RFC was erroneous and not based on substantial evidence because it completely failed to address [plaintiff's] bilateral shoulder, elbow, and hand impairments." Dkt. # 18, at 2.

Plaintiff argues that the ALJ's consideration of his elbow neuropathy and left shoulder impairments does not excuse her "complete failure to mention the objective medical evidence related to [p]laintiff's right shoulder limitations and bilateral handling limitations[.]" Id. at 3. Plaintiff argues that the citations by the ALJ to some medical records that discussed plaintiff's right shoulder impairment and problems with tingling and numbness in both of his hands fail to show that the ALJ properly considered the objective medical evidence contained within these exhibits. Id. Plaintiff argues that, when she reviewed certain medical evidence, the magistrate judge failed to recognize that, in both of the medical reports, plaintiff's treatment providers recommended "activity modification" or "avoidance of activities that trigger pain" related to plaintiff's elbow impairments. Id. at 4 (citing Dkt. ## 10-7, at 287; 10-10, at 322). Plaintiff argues that the treatment providers' recommendations were significantly probative to the issue of whether the ALJ should have addressed

---

[1] The Social Security regulations governing non-exertional limitations explain that "[r]eaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities." Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *7. They further explain that "[r]eaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs." Id. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7

7

plaintiff's elbow impairments by including related restrictions on reaching and handling in plaintiff's RFC. Id. at 4-5. Plaintiff argues that the state agency medical consultants' opinions were "stale" since these state agency medical consultants did not have access to all of the medical evidence when they provided their opinions. Id. at 6.

### A.

Plaintiff's first objection is that the ALJ should have reviewed certain medical evidence related to his bilateral upper extremity impairments. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In explaining Clifton, the Tenth Circuit clarified that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004).[2] The Tenth Circuit has also held that an ALJ need not make explicit findings regarding each function in the "function-by-function" analysis required by SSR-96-8P. See

---

[2] Plaintiff argues that the magistrate judge's reliance on Howard to support the conclusion that the ALJ adequately discussed the evidence supporting the RFC determination is flawed. Plaintiff argues that, in Howard, the Tenth Circuit found that none of the medical evidence at issue conflicted with the ALJ's ultimate RFC findings. Plaintiff argues that, in contrast, the objective medical evidence that the ALJ ignored in his case, such as the evidence with regard to plaintiff's problems with decreased bilateral shoulder range of motion, decreased or abnormal sensation, decreased upper extremity deep tendon reflexes bilaterally, and bilaterally decreased grip strength, directly contradicted the ALJ's RFC, which included no restrictions addressing these limitations. Dkt. # 18, at 2. However, consistent with the holding in Howard, the ALJ did discuss the evidence supporting no reaching or handling restriction in the RFC. Further, the magistrate judge merely quoted Howard; she did not "rely" on its facts.

Hendron v. Colvin, 767 F.3d 951, 956 (10th Cir. 2014) (finding no error where the ALJ failed to explicitly discuss "sitting" ability in assessing the claimant's RFC).

During the hearing before the ALJ, she acknowledged plaintiff's bilateral elbow neuropathy, which made it difficult to do "repeated motion" and to "pick up stuff," and a torn labrum in plaintiff's left shoulder, which made it difficult to raise his hand very high or to pick up much weight. Dkt. # 10-2, at 53. The ALJ acknowledged both subjective complaints in her narrative discussion and addressed medical records related to each. With regard to plaintiff's bilateral elbow neuropathy, the ALJ acknowledged his "continued complaints of peripheral neuropathy" and then discussed a motor nerve conduction study showing only "mild demyelinating right ulnar neuropathy at the elbow but no carpal tunnel syndrome or large-fiber polyneuropathy." Id. at 18 (citing Dkt. # 10-10, at 237). With regard to the torn labrum in plaintiff's left shoulder, the ALJ discussed examination findings of decreased range of motion in plaintiff's left shoulder with pain, id. at 17 (citing Dkt. # 10-10, at 222); MRI results for the left shoulder from December 2016 showing a "superior labral tear," id. at 17-18 (citing Dkt. # 10-10, at 93); and treatment of the left shoulder impairment in the form of steroid injections in February 2017 and physical therapy commencing in April 2017, see id. (citing Dkt. ## 10-10, at 176; 10-11, at 7). The ALJ did not impose a reaching

9

restriction in the RFC, stating that plaintiff "continued with physical therapy through June 2017 and showed improvement." Id. at 18 (citing Dkt. # 10-11, at 44).[3]

Citation to these records and the ALJ's discussion shows that the ALJ adequately considered plaintiff's elbow neuropathy (and corresponding bilateral handling limitations) and the left shoulder impairment (and corresponding reaching and handling limitations), but did not impose any further restrictions. The Court can follow the ALJ's reasoning that: (1) the elbow neuropathy was mild, did not amount to carpal tunnel syndrome, and was effectively treated with medications, such that it did not warrant further restrictions; and (2) the left shoulder tear was significantly improved through steroid injections and physical therapy, such that it did not warrant further restrictions. The Court finds the discussion adequate to demonstrate that the ALJ followed the correct legal standards, and that she acted reasonably in imposing no reaching or handling restrictions in the RFC. As the Tenth Circuit has explained, technical perfection is not required in an ALJ's decision. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).[4]

---

[3] Plaintiff argues that, in his June 2017 physical therapy progress notes, he still showed "significant capsular restriction and could benefit from further therapy or possible from manipulation." See Dkt. # 10-11, at 44. Plaintiff argues that this evidence clearly shows that his left shoulder restrictions were not resolved following his physical therapy program. Dkt. # 18, at 5. However, the notes also show that plaintiff attained range of motion during this therapy session and was in less pain. The ALJ considered this note and did not impose a reaching or handling restriction in the RFC. The Court will not substitute its judgment for that of the ALJ.

[4] Plaintiff cites an unpublished case from the Western District of Oklahoma, which states, "[c]ommon sense dictates that limited range of motion in the arm and shoulder would result, . . . in limitations in the ability to reach and extend [plaintiff's] arm." Aday v. Colvin, 2014 WL 2766080, at *2 (W.D. Okla. June 18, 2014). Plaintiff ignores the case specific facts in Aday. In Aday, the ALJ included no reaching or handling limitations, despite the plaintiff having a broken humerus. Id. Here, the record shows that the ALJ more than adequately considered plaintiff's bilateral upper extremity impairments. Moreover, plaintiff's alleged reaching impairment shows improvement, warranting no reaching limitation in the RFC.

Plaintiff's argument that the ALJ failed to review evidence of his shoulder impairment and tingling in his hands is unavailing. The record shows that the ALJ adequately considered these records and impairments, and reasonably imposed no reaching or handling restrictions in the RFC. The ALJ cited to records noting right shoulder impairments and hand numbness. See, e.g., Dkt. # 10-10, at 131 (discussing right shoulder impairment and noting that the "left [is] much worse than right"); Dkt. # 10-10, at 350 (noting that plaintiff complained that his left fingers were numb and tingling and noting plaintiff's decreased bilateral grip strength). The ALJ also stated that she considered the entire record in determining the RFC.[5] Dkt. # 10-2, at 15. The record also shows that plaintiff's reaching limitations had improved over time. See Dkt. # 10-11, at 44. The Court finds that these impairments and records were considered by the ALJ, and that she reasonably did not impose a reaching or handling limitation in the RFC.

Further, the ALJ did not commit legal error by failing to discuss certain examination findings, because they are not significantly probative and do not require specific weighing or rejection by the ALJ. Although the ALJ did not discuss every medical examination finding, the question is whether the lack of discussion of plaintiff's non-severe bilateral upper extremity impairments resulted in legal error. Upon review of the omitted medical observations and the whole record, the Court finds no need for express discussion or further analysis of such records. See Howard, 379 F.3d at 947.

---

[5] Plaintiff argues that the ALJ's assertion that she considered all of the evidence in the record is inadequate. Dkt. # 18, at 3-4. However, this is inconsistent with Tenth Circuit law. See Wall, 561 F.3d at 1070 (explaining that, where the ALJ indicates that he or she considered all of the evidence, the court's practice is to take the ALJ at his or her word). Plaintiff's cited case is distinguishable. See Cox v. Apfel, 198 F.3d 257 (10th Cir. 1999) (unpublished). In that case, the Tenth Circuit noted that an ALJ may not present a general disclaimer that she considered all of the evidence when she fails to consider significantly probative evidence. Id. at n.2. Here, the ALJ considered all of the relevant evidence and made the proper decision that no reaching or handling restriction should be included in the RFC.

**B.**

As to plaintiff's argument that the RFC is not supported by substantial evidence, his argument is unpersuasive. As explained in detail above, the ALJ fully considered the left shoulder impairment and the findings of limited range of motion in the left shoulder, but nonetheless imposed no reaching or handling restrictions after plaintiff showed improvement following physical therapy. See Dkt. # 10-11, at 44. The ALJ considered the most recent, relevant medical record regarding range of motion in the left shoulder, cited to that record, and concluded that the RFC adequately accounted for functional limitations flowing from the impairment. The Court may not reweigh that evidence or substitute its judgment for the ALJ's. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The Court finds that the ALJ's formulation of plaintiff's RFC is reasonable, and is supported by substantial evidence.

Plaintiff's argument that the state agency medical examiners was "stale" is unpersuasive. The ALJ has broad discretion in reviewing medical records. As the Tenth Circuit has held, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." Mays v. Colvin, 739 F.3d 569 (10th Cir. 2014) (internal quotation marks and citation omitted).

Plaintiff's argument that a reaching or handling restriction should have been provided in the RFC because his treatment providers recommended "activity modification" or "avoidance of activities that trigger pain" related to plaintiff's elbow impairments is unpersuasive. See Dkt. # 18, at 4 (citing Dkt. ## 10-7, at 287; 10-10, at 322). Both of these examinations were conducted prior to plaintiff's examination in which it was noted that plaintiff "continued with physical therapy through June 2017 and showed improvement." Dkt. # 10-2, at 18 (citing Dkt. # 10-11, at 44).

The Court concludes that plaintiff has not raised objections sufficient to reverse and remand the case for reconsideration; thus, the Court finds that the magistrate judge's report and recommendation should be accepted and the Commissioner's decision should be affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision is **affirmed**. A separate judgment is entered herewith.

**DATED** this 3rd day of August, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE